GHEM, INC., Plaintiff–Petitioner,

v.

MAPCO PETROLEUM, INC., Defendant–Respondent.

Supreme Court of Tennessee, at Nashville.

March 15, 1993.

Douglas E. Jones, Jones & Rogers, Nashville, Alphonse M. Alfano, Bassman, Mitchell & Alfani, Washington, DC, for petitioner.

Dimitri G. Daskal, Washington, DC, for amici curiae Tennessee Retail Gasoline Ass'n and Service Station Dealers of America, Inc.

W. Dennis Summers, Ezra B. Jones, III, Summers & Jones, P.C., Atlanta, GA, David L. Raybin, Hollins, Wagster, & Yarbrought, P.C., Nashville, for amici curiae, Alabama Oilmen's Ass'n Alabama Ass'n of Convenience Stores.

Richard Lodge, R. Dale Grimes, Bennett L. Ross, Bass, Berry & Sims, Nashville, for respondent.

Charles W. Burson, Atty. Gen., John Knox Walkup, Sol. Gen., Perry Allan Craft, Deputy Atty. Gen., Nashville, for amicus curiae Attorney General of Tennessee.

Terry Calvani, Brian C. Burr, Pillsbury Madison & Sutro, Washington, DC, Jeffrey W. Combos, Combos & Hix, P.C., Nashville, G. William Frick, Harry M. Ng, Counsel to American Petroleum Institute, Washington, DC, for amicus curiae American Petroleum Institute.

## OPINION

DROWOTA, Justice.

Pursuant to Rule 23 of the Rules of the Tennessee Supreme Court, the United States Court of Appeals for the Sixth Circuit has certified certain questions to this Court arising out of an action in which the Plaintiff seeks damages and injunctive relief based on the Defendant's below-cost pricing of gasoline.[1]

## QUESTIONS CERTIFIED

The questions for which a written opinion of this Court is requested are as follows:

I. What are the necessary elements to a cause of action under Tennessee Code Annotated § 47–25–611(a)(1)?

II. Is an actual adverse effect on competition, as opposed to an adverse effect on a competitor, a necessary prerequisite to a cause of action under T.C.A. § 47–25–611(a)(1)?

III. Is an "antitrust injury" an essential element to a cause of action under the foregoing statute, and, if so, what type of proof is sufficient to establish an "antitrust injury"?

## FACTUAL AND PROCEDURAL HISTORY

Mapco Petroleum, Inc. operates two "Delta Express" stores in Murfreesboro, Tennessee, at which locations it sells petroleum products, including gasoline, at the retail level.

1. By separate order entered simultaneously with this opinion, we have accepted certification of these questions.

The Plaintiff, Ghem, Inc., operates a Shell station across the street from one of the Defendant's two Murfreesboro stores. The Plaintiff also sells petroleum products at retail.

Ghem, Inc. alleges (which allegations, for purposes of the Defendant's Motion for Summary Judgment, are taken to be true) that the Defendant sold unleaded gasoline at prices below its cost on several specified dates between February 9, 1989 and September 11, 1989.

Ghem, Inc. filed a Complaint against Mapco Petroleum, Inc. asserting that the Defendant has violated T.C.A. § 47–25–611(a)(1), which provides as follows:

No dealer shall make, or offer or advertise to make, sales at retail at below cost to the retailer, where the effect is to injure or destroy competition or substantially lessen competition, unless such sales at retail are exempt under Section 47–25–204.

The Plaintiff claims to be entitled to compensatory and treble damages, attorneys' fees and injunctive relief as a result of the alleged violations of T.C.A. § 47–25–611(a)(1).

The U.S. District Court granted the Defendant's Motion for Summary Judgment. The U.S. District Court determined as follows:

After reviewing the evidence in the light most favorable to Ghem, this Court has concluded that, because the plaintiff failed to establish two elements critical to its cause of action, a reasonable jury could not return a verdict for Ghem.

767 F.Supp. 1418, at 1420.

The U.S. District Court found that (for purposes of dealing with Defendant's Motion for Summary Judgment) there was no dispute that Mapco Petroleum, Inc. was a "dealer" that had made "sales at retail at below cost to the retailer."

The U.S. District Court found that the Plaintiff had failed to demonstrate, or even allege, that the Defendant's below-cost sales had had the effect to "injure or destroy competition or substantially lessen

competition." In this regard, the District Court stated as follows:

This Court agrees with Mapco that Ghem has failed to allege any actual injury to competition itself. Ghem claims that it suffered damages in the form of lost profits. However, this claim involves injury to a competitor of Mapco, and therefore is unpersuasive on the question whether competition in the relevant market has suffered due to Mapco's below-cost selling.

767 F.Supp. 1418, at 1422.

The U.S. District Court held that "antitrust injury" is an essential element to a cause of action under T.C.A. § 47–25–611(a)(1). In this regard, the District Court, at 767 F.Supp. 1423, quoted the following language from the U.S. Supreme Court's decision in *Brunswick Corp. v. Pueblo Bowl-O-Matic, Inc.*, 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977):

Plaintiffs must prove *antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation.

## I.

### THE ELEMENTS OF A CAUSE OF ACTION UNDER T.C.A. § 47–25–611(a)(1)

T.C.A. § 47–25–611 is part of the "Petroleum Trade Practices Act." These statutory provisions are codified at T.C.A. §§ 47–25–601 *et. seq.* The Petroleum Trade Practices Act was enacted in 1977. Section 47–25–611 was enacted by Public Acts of 1988, Chapter No. 1033.

The first requirement for a violation of T.C.A. § 47–25–611(a)(1) is that the party accused of violating the statute be a "dealer." A "dealer" defined for purposes of this statute in T.C.A. § 47–25–602(2) as follows:

"Dealer" means any person, firm, corporation, or partnership engaged in the sale

of petroleum products to the public at retail.

The term "petroleum or related products" is defined in T.C.A. § 47–25–602(6) as follows:

"Petroleum or related products" means all petroleum distillates including but not limited to gasoline, motor fuels, lubricants and those products generally sold at retail outlets in connection with such petroleum products under a trademark, trade name, or symbol including, but not limited to, tires, batteries, and other motor vehicle accessories. Each separate grade or blend of a petroleum distillate shall be considered an individual item, product, and commodity.

The second element of a cause of action under T.C.A. § 47–25–611(a)(1) is that there be a "sale at retail," or an offer or advertisement to make such a sale. A "sale at retail" is defined in T.C.A. § 47–25–602(9) as follows:

"Sale at retail," "sales at retail" or "retail sale" means sale at retail, sales at retail, or retail sale as defined in § 47–25–202(5).

The cross reference in T.C.A. § 47–25–602(9) to § 47–25–202(5) is in error. The terms "sale at retail," "sales at retail" and "retail sale" are actually defined in T.C.A. § 47–25–202(4) as follows:

"Sale at retail," "sales at retail" and "retail sale" mean and include any transfer, made in the ordinary course of trade or in the usual prosecution of the seller's business, of title to tangible personal property to the purchaser for use or consumption and for a valuable consideration. The above terms mean any transfer of such property where title is retained as security for the purchase price but is intended to be transferred later.

The third element of a cause of action under T.C.A. § 47–25–611(a)(1) is that the sale at retail be "at below cost to the retailer." For purposes of this statute, the term "cost to the retailer" is defined in T.C.A. § 47–25–602(1) as follows:

"Cost to the retailer" means the sum of:

(A) The lower of:

(i) The purchase price of petroleum distillates to the retailer, less all trade discounts, allowances, or rebates actually granted to the retailer; or

(ii) The replacement cost of petroleum distillates at the time of retail sale in the quantity last purchased by the retailer; plus

(B) The cost of transportation of petroleum distillates from the point of purchase by the retailer to the retail location;

(C) All applicable federal, state, or local motor fuel or sales taxes not already included in the purchase price to the retailer; and

(D) The reasonable cost of overhead for petroleum distillates at that location.

The fourth element to a cause of action under the statute is that the below-cost retail sale have "the effect ... to injure or destroy competition or substantially lessen competition." A discussion of this element is contained in the following segment of this opinion.

A fifth necessary element to a cause of action is that the sale at retail not be exempt. T.C.A. § 47–25–611(a)(1) refers to an exemption provided by T.C.A. § 47–25–204, which provides exemptions for "sales at retail" under the following circumstances:

(1) In an isolated transaction and not in the usual course of business;

(2) Where merchandise is sold in bona fide clearance sales, if advertised, marked and sold as such;

(3) Where highly perishable merchandise must be promptly sold in order to forestall loss;

(4) Of imperfect or actually damaged merchandise, or merchandise which is being discontinued, if advertised, marked and sold as such;

(5) Of merchandise sold upon the complete final liquidation of any business;

(6) Of merchandise sold for charitable purposes or to unemployment relief agencies;

(7) Of merchandise sold on contract to departments of government and governmental institutions;

(8) In meeting the legal price of a competitor on merchandise which is the same as to comparable competitive factors, such as weight, quantity, quality, pack, brand or packaging; or

(9) By any officer acting under the order or direction of any court.

In addition to the exemptions provided by T.C.A. § 47–25–204, T.C.A. § 47–25–611(h) provides, in pertinent part, as follows:

Nothing in this section shall prohibit a dealer from making, or offering or advertising to make, sales at retail which are made in good faith to compete with the equally low or lower retail price of a competitor.

T.C.A. § 47–25–611(a)(3) provides that:

The burden of proving an exemption from the provisions of this subsection shall be upon the dealer claiming its sales are exempt.

A sixth element for a cause of action under T.C.A. § 47–25–611(a)(1) for a private party is that such party be described in Section 47–25–611(d)(1), which provides as follows:

Any person having an interest which is or may be adversely affected by a violation or threatened violation of subsection (a) may commence a civil action on his own behalf against any dealer who is alleged to be in violation of this section, to recover actual and special damages, for payment of civil penalties, and to enjoin the dealer who has violated, is violating or who is otherwise likely to violate this section. No person whose sales were exempt or who acted in good faith believing his sales were exempt shall be denied injunctive relief, if appropriate.

In addition to suits by private parties, the Attorney General is authorized under subsection (e) of T.C.A. § 47–25–611 to bring actions in the name of the state for "appropriate relief" against "any dealer who has violated, is violating, or who is otherwise likely to violate this section."

## II.

### REQUIREMENT OF AN ADVERSE EFFECT ON COMPETITION

In addition to listing the elements of a cause of action under T.C.A. § 47–25–611(a)(1), the Sixth Circuit Court of Appeals has requested this Court "to decide whether an actual adverse effect on competition, as opposed to an adverse effect on a competitor, is required to make below cost sales unlawful under the TPTPA."

T.C.A. § 47–25–611(a)(1) prohibits below-cost selling "where the effect is to injure or destroy competition or substantially lessen competition."

It is clear from the foregoing language in the statute that the focus is on adverse effects on *competition*, and not on other individual competitors. Thus, the fourth element of a cause of action under this statute could be described as an "adverse effect on competition."

An "adverse effect on competition" does not have to be "actual." T.C.A. § 47–25–611(d)(1) provides relief for a person who has "an interest which is *or may be* adversely affected by a violation *or threatened violation* of subsection (a)." Subsection (d)(1) further provides for injunctive relief against a "dealer who has violated, is violating *or who is otherwise likely to violate* this section."

The fourth element is an actual, or threatened, adverse effect on competition or, to paraphrase the statute, an injury to, the destruction of or a substantial lessening of competition.

To determine whether there has been an injury to, or a destruction or substantial lessening of competition, it will be necessary, in any given case, to define the geographic and product line market in which an accused violator operates. It will then be necessary to determine, at least approximately, the number of competitors operating in the relevant market and the approximate market shares of the competitors. A prerequisite to a finding that the fourth element of the cause of action exists will be, at least ordinarily, an actual or

threatened net decrease in the number of competitors; the required number of competitors eliminated (and their respective market shares) would vary, on a case by case basis.

■ It is clear, from the language of the statute, that, to determine whether there has been, or is likely to be, an adverse effect on competition, the focus should be on the competitors in the aggregate, and not on whether a specified individual competitor has been, or is likely to be, harmed or prevented from competing.

## III.

### REQUIREMENT OF "ANTITRUST INJURY"

■ The requirement of "antitrust injury," as a prerequisite to recovery for a violation of antitrust statutes, originated in the U.S. Supreme Court's decision in *Brunswick Corp. v. Pueblo Bowl-O-Matic, Inc.*, 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977).

The plaintiffs in *Brunswick Corp. v. Pueblo Bowl-O-Matic, Inc., supra,* were operators of bowling centers in three different geographic markets in the United States. The defendant, Brunswick Corporation, was one of the two largest manufacturers of bowling equipment in the United States. The defendant had acquired bowling centers in the three markets where the plaintiffs operated. The bowling centers acquired by the defendant had been having financial difficulties and had been in danger of going out of business.

The plaintiffs alleged that the acquisitions by Brunswick Corporation violated Section 7 of the Clayton Act, 15 U.S.C. § 18, which provides, in pertinent part, as follows:

No person engaged in commerce or in any activity affecting commerce shall acquire, directly or indirectly, the whole or another part of the stock or other share capital ... or any part of the assets of any person engaged also in commerce or in any activity affecting commerce, where ... the effect of such acquisition

may be substantially to lessen competition, or to tend to create a monopoly.

The plaintiffs sued for recovery under Section 4 of the Clayton Act, 15 U.S.C. § 15, which provides, in pertinent part, as follows:

Except as provided in subsection (b), any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover three-fold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

The Supreme Court in *Brunswick Corp., supra,* held that the plaintiffs did not have a cause of action against the defendant. The Supreme Court came to this conclusion, notwithstanding the fact that it found (i) that the defendant had violated Section 7 of the Clayton Act and (ii) that such violation had caused financial loss to the defendants.

The Supreme Court in *Brunswick Corp., supra,* stated as follows:

If the acquisitions here were unlawful, it is because they brought a "deep pocket" parent corporation into a market of "pygmies." Yet respondents' injury—the loss of income that would have accrued had the acquired centers gone bankrupt—bears no relationship to the size of either the acquiring company or its competitors. Respondents would have suffered the identical "loss"—but no compensable injury—had the acquired centers instead obtained refinancing or been purchased by "shallow pocket" parents as the Court of Appeals itself acknowledged, [*NBO Industries Treadway Companies, Inc. v. Brunswick Corp.*] 523 F.2d [262] at 279 [(3d Cir.1975)]. Thus, respondents' injury was not of "the type that the statute was intended to forestall." (Citations omitted.) 429 U.S. 477, at 487, 97 S.Ct. 690, at 697.

The Supreme Court in *Brunswick Corp., supra,* further stated as follows:

And it is quite clear that if respondents were injured, it was not "by reason of anything forbidden in the antitrust laws": while respondents' loss occurred "by reason of" the unlawful acquisitions, it did not occur "by reason of" that which made the acquisitions unlawful. We therefore hold that (for) the plaintiffs to recover treble damages on account of § 7 violations, they must prove more than injury causally linked to an illegal presence in the market. Plaintiffs must prove *antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation.

(Emphasis in original.) 429 U.S. 477, at 488–489, 97 S.Ct. 690, at 697.

In dictum that is significant to this certified question matter, the U.S. Supreme Court stated, in a footnote to the immediately preceding quoted language, as follows:

This does not necessarily mean, as the Court of Appeals feared, 523 F.2d at 272, that § 4 (of the Clayton Act) plaintiffs must prove an actual lessening of competition in order to recover. The short term effect of certain anticompetitive behavior—predatory below-cost pricing, for example—may be to stimulate price competition. But competitors may be able to prove antitrust injury before they are actually driven from the market and competition is thereby lessened.

429 U.S. 477, at 490, footnote 14, 97 S.Ct. 690, at 698, footnote 14.

In *Matsushita Electric Industrial Company, Ltd. v. Zenith Radio Corporation,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the U.S. Supreme Court affirmed a grant of summary judgment in favor of the defendants, who were Japanese manufacturers of television sets who had been accused by the plaintiffs of conspiring to fix and maintain low prices for television sets exported to and sold in the United States. Such a conspiracy, if proved, would have been a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, which provides, in pertinent part, as follows:

Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal.

The plaintiffs in *Matsushita Electric Industrial Company, Ltd. v. Zenith Radio Corporation, supra,* accused the defendants of conspiring to engage in "predatory" pricing. The Supreme Court declined to attribute a definitive meaning to the term "predatory" pricing, but did state as follows:

Throughout this opinion, we refer to the asserted conspiracy as one to price "predatorily." This term has been used chiefly in cases in which a single firm, having a dominant share of the relevant market, cuts its prices in order to force competitors out of the market, or perhaps to deter potential entrants from coming in. . . .

There is a good deal of debate, both within the cases and in the law reviews, about what "cost" is relevant in such cases. We need not resolve this debate here, because unlike the cases cited above, this is a Sherman Act § 1 case. For purposes of this case, it is sufficient to note that respondents have not suffered an antitrust injury unless petitioner's conspired to drive respondents out of the relevant market by (i) pricing below the level necessary to sell their products, or (ii) pricing below some appropriate measure of cost.

(Citations omitted.) 475 U.S. 574, at 585, footnote 8, 106 S.Ct. 1348, at 1355, footnote 8.

The Supreme Court granted summary judgment to the defendants in *Matsushita Electric Industrial Company, Ltd., supra,* because it found that, under the facts of the case, the conspiracy alleged was "incalculably more difficult to execute than an analogous plan undertaken by a single predator." 475 U.S. 574, at 590, 106 S.Ct. 1348, at 1358. The Supreme Court stated that the alleged conspiracy would have

been speculative and irrational, and found no genuine factual issue regarding the existence of such a conspiracy.

In *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 107 S.Ct. 484, 93 L.Ed.2d 427 (1986), the U.S. Supreme Court dealt with a case in which the plaintiff attempted to enjoin a proposed merger of two of its competitors. The plaintiff alleged that the proposed merger would violate Section 7 of the Clayton Act, 15 U.S.C. § 18. In seeking an injunction, the plaintiff relied on Section 16 of the Clayton Act, 15 U.S.C. § 26, which provides, in pertinent part, as follows:

> Any person, firm, corporation or association shall be entitled to sue for and have injunctive relief ... against threatened loss or damage by a violation of the antitrust laws.

The Supreme Court in *Cargill, Inc. v. Monfort of Colorado, Inc.*, *supra*, held that a plaintiff seeking injunctive relief under Section 16 of the Clayton Act must prove a threat of "antitrust injury." The Supreme Court concluded that the plaintiff had failed to allege or prove anything that would have caused "antitrust injury." In the course of its opinion, the Supreme Court stated that the plaintiff might have succeeded had it alleged that, following the proposed merger, the combined company would engage in predatory pricing. The Supreme Court stated that:

> Predatory pricing is an anticompetitive practice forbidden by the antitrust laws.

479 U.S. 104, at 121, 107 S.Ct. 484, at 495.

The Supreme Court again declined to attach a precise definition to the term "predatory pricing." The Supreme Court stated as follows regarding the use of the term "predatory pricing" and its potential for causing antitrust injury:

> Predatory pricing *may* (emphasis added) be defined as pricing below an appropriate measure of cost for the purpose of eliminating competition in the short run and reducing competition in the long run. It is a practice that harms both competitors *and* (emphasis in original) competition. In contrast to cutting aimed simply at increasing market share, predatory

pricing has as its aim the elimination of competition. Predatory pricing is thus a practice "inimical to the purposes of [the antitrust] laws." *Brunswick*, 429 U.S. at 488, 97 S.Ct., at 697, and one capable of inflicting antitrust injury. 479 U.S. 104, at 117–118, 107 S.Ct. 484, at 493.

In a footnote to the immediately foregoing quoted language, the Supreme Court stated as follows:

> Most commentators reserve the term predatory pricing for pricing below some measure of cost, although they differ on the appropriate measure.... No consensus has yet been reached on the proper definition of predatory pricing in the antitrust context, however....

> Although neither the District Court nor the Court of Appeals explicitly defined the term predatory pricing, their use of the term is consistent with a definition of pricing below-cost. Such a definition is sufficient for purposes of this decision.

479 U.S. 104, at 117, footnote 12, 107 S.Ct. 484, at 493, footnote 12.

In *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990), the U.S. Supreme Court held that an alleged maximum price-fixing agreement resulting in non-predatory pricing did not cause "antitrust injury" to a competitor of the parties to the alleged price-fixing agreement.

The Supreme Court, in *Atlantic Richfield Co. v. USA Petroleum Co.*, stated that, "For purposes of this case we likewise assume that petitioners' pricing was not predatory in nature." 495 U.S. 328, at 333, footnote 3, 110 S.Ct. 1884, at 1888, footnote 3. The Supreme Court contrasted the potential for causing antitrust injury of predatory, as opposed to non-predatory, pricing. In this regard, the Supreme Court stated as follows:

> When a firm, or even a group of firms adhering to a vertical agreement, lowers prices but maintains them above predatory levels, the business lost by rivals cannot be viewed as an "anticompetitive" consequence of the claimed violation. A firm complaining about the harm it suffers from non-predatory price competi-

456

tion "is really claiming that it [is] unable to raise prices." *Blair & Harrison*, Rethinking Antitrust Injury, 42 Vand. L.Rev. 1539, 1554 (1989). This is not *antitrust* injury; indeed, "cutting prices in order to increase business often is the very essence of competition." *Matsushita, supra*, [475 U.S.] at 594, 106 S.Ct. at 1359. The antitrust laws were enacted for "the protection of *competition*, not *competitors*." *Brown Shoe Company v. U.S.*, 370 U.S. 294, 320, 82 S.Ct. 1502, 1521, 8 L.Ed.2d 510 (1962) (emphasis in original). "To hold that the antitrust laws protect competitors from the loss of profits due to [non-predatory] price competition would, in effect, render illegal any decision by a firm to cut prices in order to increase market share." *Cargill*, 479 U.S. [at] 116, 107 S.Ct. at 492. (Emphasis in original.) 495 U.S. 328, at 337–338, 110 S.Ct. 1884, at 1891.

The Supreme Court in *Atlantic Richfield Co. v. USA Petroleum Co., supra*, again declined to provide a definitive definition to the term predatory pricing. The Court stated that:

We have no occasion in the instant case to consider the proper definition of predatory pricing, nor to determine whether our dictum in *Matsushita* that predatory pricing might consist of "pricing below the level necessary to sell [the offender's] products ... is an accurate statement of the law."

(Citations omitted.) 495 U.S. 328, at 341, footnote 10, 110 S.Ct. 1884, at 1893, footnote 10.

The Supreme Court in *Atlantic Richfield Co. v. USA Petroleum Co., supra*, further stated as follows:

Antitrust injury does not arise for purposes of § 4 of the Clayton Act ... until a private party is adversely affected by an *anticompetitive* aspect of the defendant's conduct.... In the context of pricing practices, only predatory pricing has the requisite anticompetitive effect.

(Citations omitted.) 495 U.S. 328, at 339, 110 S.Ct. 1884, at 1892.

In *Kerr v. Hackney Petroleum Tennessee, Inc.*, 775 S.W.2d 600 (Tenn.App.1988),

the Tennessee Court of Appeals dealt with an alleged violation of T.C.A. § 47–25–623. This statute, which is part of the Petroleum Trade Practices Act, provides, in pertinent part, as follows:

(a)(1) It is unlawful for any refiner, distributor, or producer of petroleum products engaged in business in this state, either directly or indirectly, to discriminate in prices between purchasers for petroleum products of like grade and quality ... where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them.

Unlike T.C.A. § 47–25–611, a private remedy for a violation is not expressly provided for in T.C.A. § 47–25–623. The Court of Appeals nonetheless held that there was a private right of action for purposes of T.C.A. § 47–25–623, stating as follows:

Despite the absence of an express provision for damages as found in the federal statutory framework, a private right of action can be inferred from the purpose for which the Tennessee legislature enacted Tennessee Code Annotated § 47–25–623.

775 S.W.2d 600, at 603.

The Court of Appeals in *Kerr v. Hackney Petroleum Tennessee, Inc., supra*, also held that "antitrust injury" is an essential element to a cause of action under T.C.A. § 47–25–623. In this regard, the Court of Appeals stated as follows:

Following the reasoning of the federal authority interpreting § 4 of the Clayton Act, this Court holds that a plaintiff seeking damages pursuant to T.C.A. § 47–25–623 must prove that he has been injured as a result of the defendant's violation of the statute. The U.S. Supreme Court has referred to the requirements of actual injury and causation as "antitrust injury":

Plaintiffs must prove *antitrust injury*, which is to say injury of the type

the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violations or of anticompetitive acts made possible by the violation.

*Brunswick v. Pueblo Bowl-O-Matic,* 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977). In other words, did the price discrimination harm the plaintiff's ability to compete with a favored competitor?

775 S.W.2d 600, at 605.

We hold that "antitrust injury" is a prerequisite to a cause of action under T.C.A. § 47–25–611(a)(1). Inasmuch as there is a violation of this statute only in cases in which there is pricing (1) that is below cost and (2) that has the effect "to injure or destroy competition or substantially lessen competition," the requirement of "antitrust injury" is satisfied, for purposes of this statute, whenever the plaintiff demonstrates that the injury, destruction or substantial lessening of competition has harmed, or is likely to harm, the plaintiff. This holding is consistent with the definition attributed to the term "antitrust injury" by the U.S. Supreme Court in *Brunswick Corporation v. Pueblo Bowl-O-Matic, Inc., supra,* which is:

> Injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation.

429 U.S. 477, at 489, 97 S.Ct. 690, at 697.

■ The Court of Appeals for the Sixth Circuit has asked this Court, if we determine that "antitrust injury" is a prerequisite to a cause of action under T.C.A. § 47–25–611(a)(1), to state what type of proof is sufficient to establish such "antitrust injury." The type of proof necessary depends on the status of the plaintiff in relation to the market in which there is an actual or threatened injury to, or destruction or substantial lessening of competition.

If the plaintiff is a consumer of products sold in such market, then "antitrust injury" could be proved by showing that the adverse effect on competition has resulted, or is likely to result, in higher prices and/or reduced quality and convenience of products and services. Such a showing should be very easy in most cases.

■ In the case of a competitor of the alleged violator of T.C.A. § 47–25–611(a)(1), "antitrust injury" could be proved by showing that the plaintiff's ability to compete has been, or is likely to be, adversely affected by the adverse effect on competition. If the price that violates the statute is below the cost of the plaintiff, as well as being below the violator's cost, this would be sufficient to demonstrate that the plaintiff's ability to compete has been adversely affected by the harmful effect on competition, and thus that it has suffered "antitrust injury." If the price that violates the statute is not below the plaintiff's cost, then the plaintiff might still, in some cases, be capable of demonstrating that its ability to compete has been adversely affected by the harmful effect on competition.

## CONCLUSION

A summary of our response to the three questions certified by the U.S. Court of Appeals for the Sixth Circuit is set forth in the following listing of the elements to a cause of action under Tennessee Code Annotated § 47–25–611(a)(1):

1. *Dealer.* The alleged violator of the statute must be a "dealer" as defined in T.C.A. § 47–25–602(2).

2. *Sales at Retail.* The dealer must make, or offer or advertise to make, "sales at retail" as defined in T.C.A. § 47–25–202(4).

3. *Below "Cost to the Retailer."* The sale that is made, or that is offered or advertised, must be at a price that is below the "cost to the retailer" as defined in T.C.A. § 47–25–602(1).

4. *Adverse Effect on Competition.* The effect of the below-cost sale must be "to injure or destroy competition or substantially lessen competition." Thus, there

must be an actual, or threatened, adverse effect on competition in the relevant market. For purposes of this element, the inquiry must be focused on the effect on competitors in the aggregate, and not on the effect on an individual competitor. Ordinarily, an injury to, or destruction or substantial lessening of competition would require that there be an actual or threatened net decrease in the number of competitors competing in the relevant market.

5. *Absence of exemption.* There must be no applicable exemption, under T.C.A. § 47–25–204, T.C.A. § 47–25–611(h) or otherwise. The burden of proving the presence of an exemption is on the dealer claiming that its sales are exempt. T.C.A. § 47–25–611(a)(3). (Thus, this requirement might be viewed as an absence of an affirmative defense, rather than as an essential element to the cause of action.)

6. *"Antitrust injury."* In the case of a suit by a private party, the plaintiff must have "an interest which is or may be adversely affected by a violation or threatened violation of subsection (a)." T.C.A. § 47–25–611(d)(1). The actual or threatened adverse effect on such an interest must constitute an "antitrust injury." For purposes of T.C.A. § 47–25–611(a)(1), "antitrust injury" means an injury that results from an injury to, or destruction or substantial lessening of, competition. In the case of a competitor of the alleged violator of the statute, the competitor can show that it has suffered "antitrust injury" by showing that the adverse effect on competition inhibits its ability to compete.

The Clerk will transmit this opinion and the accompanying order in accordance with Rule 23, Section 8 of the Rules of the Supreme Court. The costs in this Court will be taxed to the Petitioner.

REID, C.J., and O'BRIEN, DAUGHTREY and ANDERSON, JJ., concur.